Luzerne Township *v.* Fayette County, Appellant.

Argued March 22, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Dean D. Sturgis,* of *Morrow & Sturgis,* with him *C. W. Martin,* County Solicitor, and *E. C. Higbee,* of *Higbee, Matthews & Lewellyn,* for appellant.

*Linn Voorhees Phillips,* with him *H. Vance Cottom,* for appellee.

OPINION BY MR. JUSTICE STERN, May 9, 1938:

The Township of Luzerne seeks to recover from the County of Fayette, of which it is a part, the sum of $23,591.50, with interest, alleged to be due as part of the cost of improvement of the East Fredericktown Road and the Rush Run Road, both within the Township.

The Act of June 12, 1919, P. L. 450, as amended by the Act of March 10, 1921, P. L. 26, governs cases in which a public highway, other than a state highway or state-aid highway or county road is to be improved jointly by a county and a township or borough. These acts provide that no county shall appropriate and expend moneys for such improvement unless and until the supervisors of the township, or the council of the borough, shall have presented to the county commissioners a petition setting forth that a highway, or a section thereof, within the township or borough is in need of reconstruction or repair, and particularly describing it, and unless and until the application shall have been submitted to and approved by the State Highway Department.

Since counties and townships do not have any common-law power to build or improve roads, the statute vesting such power in them must be strictly complied with: *Greene County v. Center Township,* 305 Pa. 79, 90. The Township of Luzerne recognized this. It desired to improve the East Fredericktown Road, and accordingly, in order to obtain assistance from the County, its supervisors presented the required petition to the county commissioners describing the road and asking for aid under the terms of the Act of 1919 and the

amendatory Act of 1921. The commissioners passed a resolution agreeing, on behalf of the County, to contribute fifty per cent of the cost of the improvement of this highway. The application was submitted to and approved by the State Highway Department, and bids were taken by the Township, but, on the advice of the State Highway Department, they were rejected as too high.

The matter remained for some time at a standstill. The Township then conceived the idea of a new project, consisting of the elimination of that part of the East Fredericktown Road known as "the Narrows," where the construction would have been extremely costly, and the substitution therefor of a connecting highway, the Rush Run Road. What the township supervisors should have done in order to consummate this plan was to file with the county commissioners a new petition, or at least an amendment to the original petition, in accordance with the statutory procedure. This they failed to do. They went ahead with their plans, issued bonds to cover the cost, and let a separate contract for the improvement of each road. The work proceeded under the supervision of the State Highway Department. From time to time the County contributed funds by issuing vouchers bearing the legend: "To Fayette County's share of the cost of construction of Luzerne Township Road," these being made out directly to the contractor building the East Fredericktown Road; in this way the County paid a total of $71,408.50, which amounted to approximately half the cost of the improvement of that road. The Township claimed, however, that further sums were due by the County because, as it alleged, the supervisors, prior to the commencement of the work, had one day met the commissioners on the Rush Run Road, and at this informal meeting the new plans for the two roads were discussed, the supervisors asked the commissioners to defray half the total cost, and the commissioners orally agreed that the County would pay $100,000 to-

ward the work on both highways. Accordingly the Township called upon the County to pay $28,591.50, the balance of the $100,000 claimed to have been thus promised. In response to this demand, the County commissioners passed a resolution appropriating $5,000 to the township supervisors as "county aid of Rush Run Road," but further payments were refused, and the Township brought the present suit upon the alleged oral contract of the commissioners. At the trial, the making of such an agreement was not admitted by defendant, but the jury found for the Township, and the court overruled defendant's motions for a new trial and for judgment n. o. v.

Had the Township formally petitioned the County for aid for the Rush Run Road improvement as provided in the Acts of 1919 and 1921, no express contract between these governmental agencies would have been necessary. The petition could have been favorably acted upon by an appropriation, or by a proper resolution of acceptance, and the petition and such a resolution would have fastened legal obligations upon the parties: *Greene County v. Center Township,* 305 Pa. 79. Since, however, no such proceedings were taken, the Township is now relegated for its cause of action to the oral agreement of the commissioners. Unfortunately for it, such an agreement is unenforceable. All contracts by county commissioners involving an expenditure exceeding $100 must be in writing: Act of June 27, 1895, P. L. 403, section 10, as amended by the Act of April 7, 1927, P. L. 176, and embodied in the General County Law of May 2, 1929, P. L. 1278, section 348.* This provision of the law is not merely directory, but mandatory, and a contract which does not comply with it imposes no liability upon the county. Where a statute prescribes the formal mode of making public contracts it must be observed; otherwise

---

* These acts also require that such contracts must, immediately after their execution, be filed with the controller.

they cannot be enforced against the governmental agency involved: *Smart v. Philadelphia,* 205 Pa. 329; *Philadelphia Company v. City of Pittsburgh,* 253 Pa. 147, 151, 152; *Trevorton Water Supply Co. v. Zerbe Township,* 259 Pa. 31, 37, 38; *Union Paving Co. v. Philadelphia,* 263 Pa. 577; *Harris v. Philadelphia,* 283 Pa. 496, 503; *Commonwealth v. Jones,* 283 Pa. 582; *Foresman v. Gregg Township,* 297 Pa. 369, 372; *Wilkes-Barre Connecting R. R. Co. v. Kingston Borough,* 319 Pa. 471, 474; *Nuebling v. Topton Borough,* 323 Pa. 154, 156; *Morganstern Electric Co. v. Coraopolis Borough,* 326 Pa. 154, 158, 159.

In an attempt to hurdle this formidable barrier plaintiff invokes the doctrines of ratification and estoppel. Presumably the ratification relied upon is the making of the $5,000 payment on the Rush Run Road improvement. If so, it is of no avail to plaintiff. Where a contract is unenforceable because not made in a specified manner, it can be validated only by a ratification which observes the formalities necessary in the first instance: *McDowell v. Simpson,* 3 Watts 129, 136; *Dumn v. Rothermel,* 112 Pa. 272, 281; *Allegany Gas Co. v. Kemp,* 316 Pa. 97, 105, 106.

The doctrine of estoppel is likewise inapplicable. The oral agreement between the Township and the County was invalid because of the statutory law of the State, which was within the cognizance of both parties and which they were equally bound to observe. A person who deals with a government official is bound to know the limitations of that official's authority and to govern himself accordingly. To weaken this principle would be to render abortive the mandatory requirements of the law in regard to the making of public contracts, and thus to destroy that salutary protection of the people against their own representatives which such legislation is designed to secure.

It is true that, in order to avoid results involving obvious injustice, the courts of some jurisdictions, includ-

ing our own, have held that where a municipality or other local agency of government has voluntarily accepted and retained the benefits of a contract which it had the power to make but which was defective in the method of its execution and consequently invalid, the party who, by furnishing labor or material, has conferred such benefits may recover compensation therefor in a suit, not on the invalid contract itself, but upon a quantum valebat, quantum meruit, or for money had and received; see article on "Quasi-Contractual Liability of Municipal Corporations" by Professor Tooke, 47 Harvard Law Review 1143. Common honesty requires that a municipality or other governmental agency should not be allowed, any more than a private individual, wholly to repudiate an obligation of which it has deliberately appropriated the benefits, and, in such cases, if the municipality does not restore the property which it has received, an implied obligation to make compensatory payment for it arises: *Rainsburg Borough v. Fyan*, 127 Pa. 74, 80; *Long v. Lemoyne Borough*, 222 Pa. 311, 317, 318; *Aspinwall–Delafield Co. v. Borough of Aspinwall*, 229 Pa. 1, 6; *Ohlinger v. Maidencreek Township*, 312 Pa. 289, 294, 295, 296; *Ephrata Water Co. v. Ephrata Borough*, 16 Pa. Superior Ct. 484, 489, 490; *Washington Female Seminary v. Washington Borough*, 18 Pa. Superior Ct. 555, 559. This principle, however, has no application to the present case for several reasons: first, the roads were built within the Township itself, and can scarcely be said to constitute property received by the County; second, the doctrine does not extend to benefits which by their very nature cannot be surrendered and the retention of which is therefore not voluntary, as, for example, paved highways or improvements upon buildings: *Kreusler v. McKees Rocks School District*, 256 Pa. 281; *Willis v. York County Directors of the Poor*, 284 Pa. 138, 142, 143; *Chester School District's Audit*, 301 Pa. 203, 216; *In re Appeal of Sykesville Borough*, 91 Pa. Superior Ct. 335; third, even

254

where a right of recovery in quasi contract exists, it cannot be established in a suit on the express contract: *Neubling v. Topton Borough,* 323 Pa. 154, 156.

The judgment is reversed and is here entered for defendant.