# Liquor Control Board v. Northwest Athletic Association.

Argued February 7, 1973, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Alexander J. Jaffurs*, Assistant Attorney General, with him *J. Leonard Langan*, Assistant Attorney General, and *J. Shane Creamer*, Attorney General, for appellant.

*Paul D. Sulman*, for appellee.

OPINION BY JUDGE MENCER, March 16, 1973:

The Northwest Athletic Association (Northwest) was issued a club liquor license for premises at 229 West Columbia Avenue, Philadelphia, Pennsylvania. In November of 1962, Northwest placed its license in escrow with the Pennsylvania Liquor Control Board (Board). This escrow arrangement was in accord with the Board's regulations and had the effect of rendering the license inactive. However, the license was subject to annual renewals as of November 1 of each year, and Northwest did renew yearly.

In 1968, the Legislature decided to limit the period that a license could be held in escrow. The Act of July 20, 1968, P. L.    , No. 201, §1, 47 P.S. §4-474, which became effective September 18, 1968, provided the following: "Whenever a club license has been returned to the board for the benefit of the licensee due to the licensed establishment not having been in operation for any reason whatsoever for a period of time not exceeding fifteen days, the license shall be held by the

board for the benefit of the licensee for a period of time not exceeding one year, or, upon proper application to the board, for an additional year, and the license shall be revoked at the termination of the period, and transfer of the license shall not be permitted after the termination of the period."

On September 21, 1970, the Board issued a citation against Northwest, asserting that its license had been in escrow for safekeeping with the Board for a period in excess of two years. Following a hearing on the citation, the Board, by order dated October 15, 1970, revoked Northwest's license. No challenge is made by Northwest as to the legal sufficiency of the hearing or as to any notice requirements or any administrative procedures preceding the hearing. Northwest appealed from the Board's order of revocation to the Court of Common Pleas of Philadelphia County and its appeal was sustained. The Board filed this appeal and we reverse the lower court.

The sole issue in this appeal is whether, under the factual situation here, the terms of the Liquor Code[1] control or whether the annual renewal of Northwest's club liquor license by the Board overrides the clear provisions of the statute. Section 474 of the Liquor Code (47 P.S. §4-474) imposed a two-year limitation on the escrow status of club licenses. The mere passage of the two-year time period subjects the license to revocation. The Board, having held Northwest's license in escrow for nearly six years at the time section 474 became law, might well have sought to revoke the license in 1968, but, having afforded Northwest an additional period of two years following the effective date of section 474, it does not now follow that a prior annual license renewal supersedes the positive provision of section 474.

---

[1] Act of April 12, 1951, P. L. 90, as amended, 47 P.S. §1-101 et seq.

In *Tahiti Bar, Inc. Liquor License Case*, 395 Pa. 355, 363, 150 A. 2d 112, 117 (1959), our Supreme Court, quoting from *Cavanaugh v. Gelder*, 364 Pa. 361, 72 A. 2d 85 (1950), enunciated the following: " ' " . . . 'The power of the state to regulate the sale of intoxicating liquors, and, in the exercise of that power, to authorize the granting of licenses to fit persons under such conditions as the legislature may impose is too well settled to be open to discussion.' Accordingly, since the state may absolutely forbid or may license the sale of intoxicating liquors, it may impose such conditions upon the granting of licenses as it sees fit, and one who accepts such license must be deemed to consent to all proper conditions and restrictions which have been or may be imposed by the legislature in the interest of the public morals or safety. . . ." ' "

We accordingly believe that the Legislature could and did impose a two-year limitation on the escrow status of club licenses and that, under the facts of this case, the application of the two-year limit resulted in, and justified, the revocation of Northwest's license.

The order of the Court of Common Pleas of Philadelphia County, sustaining the appeal of the Northwest Athletic Association and dismissing the Pennsylvania Liquor Control Board's revocation order relative to club license No. C-2259, is hereby reversed.

---

DISSENTING OPINION BY JUDGE CRUMLISH, JR.:

I dissent. I believe that the language of Section 4-474 supports appellee's contention that it is entitled to have its license remain in escrow until October 31, 1970. As noted by the majority, this Section became effective September 18, 1968 at a time when this license already was being held in escrow for appellee's benefit by virtue of prior law. I believe that the provisions of Section 4-474 are not applicable to the previous renewal

which had been granted and which was scheduled to run until October 31, 1968. When appellee renewed its license for the year to end October 31, 1969 it was for the first time that the provisions of Section 4-474 applied to it. Renewal of the license for the year ending October 31, 1970 was the "additional year" permitted by that Section.

Moreover, the official action taken here by the Liquor Control Board was the *renewal* of appellee's license until October 31, 1970 even though the license was being held in escrow. Appellee was entitled to rely upon that official action. Only administrative chaos will result if the Board establishes and follows certain official policy and subsequently institutes proceedings inconsistent with it. Such inconsistent official conduct is especially unfair in the instant case in view of the fact that the record does not disclose that appellee ever knew that its prior approval was subject to a revocation of the Board's prior commitment. Appellee first knew of the jeopardy of its license when the citation issued September 21, 1970. Although the period of time between the citation and the effective revocation was not extensive, it would have allowed sufficient time for appellee to submit an application for transfer of its license. This alternative was, for all practical purposes, foreclosed.

I would affirm the lower court.