Appeal of Nesquehoning Legion Home Association From Order of Pennsylvania Liquor Control Board Revoking Club Liquor License. Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board *v.* Nesquehoning Legion Home Association. Pennsylvania Liquor Control Board, Appellant.

Argued April 8, 1976, before Judges KRAMER, WILKINSON, JR. and BLATT, sitting as a panel of three.

*J. Leonard Langan,* Assistant Attorney General, with him *Harry Bowytz,* Chief Counsel, and *Robert P. Kane,* Attorney General, for appellant.

*John P. Lavelle,* for appellee.

OPINION BY JUDGE BLATT, August 17, 1976:

This is an appeal by the Pennsylvania Liquor Control Board (Board) from an order of the Court of Common Pleas of Carbon County reversing a decision of the Board which had revoked the club liquor license of the Nesquehoning Legion Home Association (Nesquehoning).

As the lower court observed, Nesquehoning first acquired a club liquor license in 1946 and it was granted annual renewals thereafter for successive license years running each year from August 1 to the following July 31. The court found, however, that Nesquehoning surrendered its license to the Board for safekeeping on May 10, 1972, while the club was undergoing a reorganization. In such case, Section 474 of the Liquor Code,[1] 47 P.S. §4-474 applies and it provides as follows:

"Whenever a club license has been returned to the board for the benefit of the licensee due to the licensed establishment not having been in operation for any reason whatsoever for a period of time not exceeding fifteen days, the license shall be held by the board for the benefit of the licensee for a period of time not exceeding one year, or, upon proper application to the board, for an additional year, *and the license shall be revoked at the termination of the period,* and transfer of the license shall not be permitted after the termination of the period." (Emphasis added.)

Here the initial one-year period of safekeeping by the Board expired on May 10, 1973, and Nesquehoning did not apply for an extension until June 4, 1973, when it requested that the period of safekeeping be prolonged to July 31, 1974, the date on which the next

---

[1] Act of April 12, 1951, P.L. 90, *as amended.*

normal license year of Nesquehoning would expire. Disregarding the lateness of this application, the Board extended the period of safekeeping to May 10, 1974 evidently recognizing that the Liquor Code provides for only an additional year of safekeeping. In addition, the Board renewed Nesquehoning's liquor license for the license year running from August 1, 1973 to July 31, 1974. On May 24, 1974, after the renewed one-year period for safekeeping had expired, Nesquehoning again requested a renewal of its license for the year beginning August 1, 1974 and on May 31, 1974 requested that the period of safekeeping be extended to August 10, 1974. At this time the Board issued a rule to show cause why the license should not be revoked in accordance with Section 474 of the Liquor Code, and, after a hearing held on January 27, 1975, it revoked Nesquehoning's license effective February 19, 1975. Nesquehoning prevailed in the appeal it then took to the Court of Common Pleas of Carbon County which, after a de novo hearing, concluded that the Board's revocation order was based upon violations of the Liquor Code rather than upon the expiration of the two-year period under Section 474. No evidence was presented at the de novo hearing to support such violations and the court below, therefore, reversed the Board without prejudice, allowing it to entertain a new revocation proceeding in accordance with Section 474 of the Liquor Code.

After reviewing the opinion of the Board, it is clear to us that its primary reason for revoking Nesquehoning's liquor license was the fact, as found by the Board, that Nesquehoning failed to resume the operation of its establishment or otherwise to activate the use of its liquor license prior to May 10, 1974 at which time the terms of Section 474 of the Liquor Code provided that "the license shall be revoked." Obviously, revocation of a liquor license under this provision

is mandatory and not subject to the discretion of the Board, and, while it is true that the Board here also considered other violations of the Liquor Code in reaching its decision, the court below was presented sufficient evidence and made the necessary factual findings to conclude that the revocation of the Nesquehoning liquor license was proper under Section 474 of the Liquor Code. It, therefore, should have affirmed the Board's action. Both the law and the facts of this case present a clear basis of support for the license revocation. *See Liquor Control Board v. Northwest Athletic Association,* 8 Pa. Commonwealth Ct. 114, 301 A.2d 711 (1973). The order of the court below is hereby reversed.